**Mary J. O'NEAL, Plaintiff,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; Central States, Southeast and Southwest Areas Health and Welfare Fund; and Howard McDougall, Trustee, Defendants.**

**No. CIV.A. 104CV2049BBM.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 1, 2005.

[redacted]

[redacted]

[redacted]

[redacted]

Mary J. O'Neal, Decatur, GA, Pro Se.

Thomas J. Gallo, Robins Kaplan Miller & Ciresi, Atlanta, GA, for Defendants.

***ORDER***

MARTIN, District Judge.

This action arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, is before the court on Plaintiff's Objection to Notice of Removal, construed as Plaintiff's Motion to Remand [Doc. No. 2]; Defendant Central States, Southeast and Southwest Areas Health and Welfare Fund's Motion to Dismiss or Alternatively for Summary Judgment [Doc. No. 8]; Defendant Central States, Southeast and Southwest Areas Pension Fund's Motion to Dismiss Without Prejudice [Doc. No. 9]; and Defendants' Motion for a Protective Order [Doc. No. 13].

## I. *Factual and Procedural Background*

The facts presented here are taken from Defendants' Statements of Material Facts and the court's independent review of the record and are undisputed.[1] *Pro se* Plaintiff Mary J. O'Neal ("Plaintiff" or "Ms.

1. The court is mindful of its duty to construe any disputed facts in favor of the non-moving party. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997). However, the court has determined that Plaintiff does not dispute the facts as presented by Defendants because she fails to respond to all but three of Defendants' twenty-nine facts, writing only that she "nei-

O'Neal") brings this action against Defendants Central States, Southeast and Southwest Areas Pension Fund ("Central Pension Fund"); Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central Health and Welfare Fund"); and Trustee Howard McDougall ("McDougall") for failure to pay benefits, which has been construed as a claim for wrongful denial of benefits arising under ERISA. *See* 29 U.S.C. § 1132(a)(1)(B). Ms. O'Neal originally filed this action in the Superior Court of Fulton County, and Defendants removed the case to this court on July 14, 2004.

Mr. Robert Bobby Harris ("Mr.Harris"), who was a participant in employee benefit plans offered through Central States, died on April 8, 2000. In his will, he left 100% of his estate to his mother, Ms. Besy Harris ("Ms.Harris"),[2] and 100% of his estate to Ms. O'Neal, Ms. Harris's caretaker.[3] Ms. Harris predeceased her son in 1993,[4] and Mr. Harris's estate thus passed in its entirety to Ms. O'Neal. This case involves two assets in Mr. Harris's estate, his life insurance policy with Central Health and Welfare Fund (the "Policy") and his pension fund with Central Pension Fund (the "Fund"), which were not distributed during the initial distribution of the estate.

### A. The Policy

Mr. Harris had the Policy, valued at $25,000, through Central Health and Wel-

fare Fund. In 1998, Mr. Harris named Ms. Harris as the beneficiary of the Policy, but after Ms. Harris died, Mr. Harris never changed the beneficiary of the Policy with the Central Health and Welfare Fund. Ms. O'Neal asserts that the proceeds of the Policy should pass to Mr. Harris's estate and, consequently, to her as the sole heir to the estate. However, the Trustees of the Central Health and Welfare Fund, charged with making benefits determinations, decided that the proceeds of the Policy should pass according to the terms of the Policy Plan, which provide that, if no beneficiary is designated by the policyholder, benefits will be payable to the first surviving class in the following order: (1) spouse; (2) children, in equal shares; (3) parents, in equal shares; (4) siblings, in equal shares; and (5) estate. Because there were other potential beneficiaries under the Policy, namely a common law wife and four children, the Central Health and Welfare Fund denied Ms. O'Neal's claim that the Policy benefits should pass to Mr. Harris's estate. Ms. O'Neal appealed Central Health and Welfare Fund's determination through its internal administrative appeals system, but to no avail. She now brings a claim for wrongful denial of the Policy benefits.

### B. The Fund

Mr. Harris also had the Fund, the pro-

---

ther admit[s][n]or den[ies]" most of the facts set forth, a practice which is unacceptable under Local Rule 56. *See* L.R. 56.1B.(2)a.(4), N.D. Ga. As for the three facts to which Plaintiff offers direct responses, she admits them as true. Thus, it appears that there are no disputed facts between the parties, which is likely due to the fact that the primary question presented in this case is whether Defendants' interpretation was proper, an inquiry that is not fact-intensive.

2. Although some of the documents filed with the court refer to Ms. Harris as "Bessie Har-

ris," the court has chosen to refer to her as "Besy Harris," as she was listed by Mr. Harris on his beneficiary designation card.

3. The Probate Court construed Mr. Harris's grant of two 100% portions of his estate as a request that the estate be divided equally between Ms. Harris and Ms. O'Neal.

4. Defendants state that Ms. Harris died in 1983, but other evidence in the record reflects that Ms. Harris actually died in 1993.

ceeds of which total $4,000,[5] through Central Pension Fund. Ms. O'Neal alleges that the Fund proceeds too should pass to Mr. Harris's estate. Central Pension Fund asserts that Ms. O'Neal has not made a claim for the proceeds of the Fund and has therefore failed to exhaust her administrative remedies, barring her claim for the Fund proceeds, which is presently before this court.

The court now considers the various motions filed by the parties.

## II. *Plaintiff's Motion to Remand*

 After Defendants removed this action to federal court, Plaintiff filed an Objection to Notice of Removal, which the court has construed as a Motion to Remand. The court must therefore address whether Defendants properly removed Plaintiff's case to this court. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by . . . the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over, among other cases, cases involving federal questions, or cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Ordinarily, the court would consider whether the plaintiff has stated a claim arising under federal law in her complaint. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 2494–95, 159 L.Ed.2d 312 (2004) (holding that whether a particular case arises under federal law generally turns on the well-pleaded complaint rule). However, the complete preemption doc-

trine overrides the general concept that "the plaintiff is master of [her] pleadings." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir.1992). When a complaint purports to raise only state law claims, those claims may be recharacterized as a federal claim so that removal is proper if the preemptive force of a statute is so strong as to displace all state law causes of action in the particular area. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Stated another way, "federal law [may] so fill[ ] every nook and cranny [such] that it is not possible to frame a complaint under state law." *Bartholet*, 953 F.2d at 1075. The Supreme Court has determined that ERISA is this type of comprehensive federal law.

> When a federal statute wholly displaces the state-law cause of action through complete pre[ ] emption, the state claim can be removed. This is so because when the federal statute completely pre[ ]empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. ERISA is one of these statutes.

*Davila*, 124 S.Ct. at 2494–95 (internal citations and quotation marks omitted).

 Complete preemption and the traditional concept of defensive preemption, which allows a defendant to escape liability for certain state law claims when relevant federal law is expansive, are often confused. *See, e.g., Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1282 (11th Cir.2005) (citation omitted) ("The complete preemption and defensive preemption doctrines are very complicated and the cases are numerous.").[6] The term "complete

---

5. Ms. O'Neal originally believed that the Fund proceeds total $10,000, but Defendants have informed the court that the proceeds instead total $4,000.

6. The court is comforted to know that it is not alone in its view that the doctrines of complete and defensive preemptions are complicated. Complete preemption has been described as "a doctrine only a judge could love." *Bartholet*, 953 F.2d at 1075.

preemption" is actually a misnomer because "the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine." *Lister v. Stark*, 890 F.2d 941, 943 n. 1 (7th Cir. 1989). In the area of ERISA, complete preemption is available only when a plaintiff seeks relief available under 29 U.S.C. § 1132(a), *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999), while defensive preemption allows a defendant to preempt certain state law claims pursuant to 29 U.S.C. § 1144(a) but does not serve as a basis for removal. *Cotton*, 402 F.3d at 1281.

 In an ERISA case, there is complete preemption when the following elements are satisfied: (1) a relevant ERISA plan exists; (2) the plaintiff has standing; (3) the defendant is an ERISA entity; and (4) the complaint seeks compensatory relief akin to what is available under 29 U.S.C. § 1132(a). *See Butero*, 174 F.3d at 1212. The court now considers whether these requisites are met in this case.

### A. Are the Policy and Fund ERISA Plans?

 Employee benefit plans are covered by ERISA when five prerequisites are met: (1) a plan, fund, or program; (2) is established or maintained; (3) by an employer, employee organization, or both; (4) for the purpose of providing certain specified benefits, such as life insurance or pension funds; (5) to participants or beneficiaries. *See* 29 U.S.C. §§ 1002(1) & 1002(2)(A). The court has reviewed the record evidence, which consists of relevant provisions of the Policy and Fund Plans as well as affidavits, and the court finds that the plans at issue constitute benefit plans governed by ERISA. In particular, the Policy and the Fund are plans established by Mr. Harris's employer through Central States to provide life insurance and pen-

sion fund benefits to Mr. Harris or his designated beneficiaries.

### B. Does Plaintiff Have Standing?

 Under 29 U.S.C. § 1132(a), four classes of persons have standing to sue: (1) participants; (2) beneficiaries; (3) fiduciaries; and (4) the Secretary of Labor. In this case, Plaintiff is a potential beneficiary under the relevant plans and thus has standing to sue.

### C. Are Defendants ERISA Entities?

 Plans and their fiduciaries are ERISA entities. *See* 29 U.S.C. § 1132(d); Ronald J. Cooke, *ERISA Practice & Procedure*, § 8:7 (2d ed.2005). In this case, two of the Defendants are the plans at issue, and the other Defendant is a Trustee, who is a plan fiduciary. Thus, Defendants are ERISA entities and may be sued.

### D. Did Plaintiff Seek Compensatory Relief Akin to What is Available under 29 U.S.C. § 1132(a) in the Complaint?

 A beneficiary may bring an action for various types of relief under 29 U.S.C. § 1132(a), including "to recover benefits due to [her] under the terms of [a] plan." 29 U.S.C. § 1132(a)(1)(B). In the Complaint, Plaintiff asserts that "[t]he proceeds that are currently held by Central States Southeast and Southwest Areas Health and Welfare and Pension Funds must be paid to the Estate of Robert Bobby Harris" because Defendants' determination that the proceeds should not be distributed to Mr. Harris's estate was wrong. Furthermore, Plaintiff cites portions of the Policy documents and provides the court with the letter from Central Health and Welfare Fund, which informed her that her claim for benefits due under the Policy was denied. Based on Plain-

tiff's allegations, the court finds that Plaintiff has set forth a claim that is actually a claim for wrongful denial of benefits.[7]

Because all of the elements for complete preemption are satisfied, the court construes Plaintiff's claim as one for wrongful denial of benefits pursuant to ERISA. *See* 29 U.S.C. § 1132(a)(1)(B). Having determined that Plaintiff's claim is an ERISA claim, the court finds that jurisdiction is proper in this court. Plaintiff's Motion to Remand is therefore DENIED.

■■■ After finding that complete preemption defeats a plaintiff's motion to remand, some courts afford the plaintiff an opportunity to amend her complaint to properly state a claim for wrongful denial of benefits under ERISA. *See, e.g., Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1491 (7th Cir.1996). In this case, however, the court has determined that such an exercise would be futile. It is clear from the Complaint that Ms. O'Neal states a claim for wrongful denial of benefits under the Policy and the Fund (although perhaps without the precision of someone trained in the law), and that the parties agree on the relevant Plan documents that will guide the court's determination of whether Defendants properly interpreted the pertinent provisions. An amended Complaint would not change the outcome of this case.

### III. Defendant Central Pension Fund's Motion to Dismiss Without Prejudice

■■■ Central Pension Fund has moved to dismiss Plaintiff's claim for Fund proceeds because it asserts that Plaintiff has never made a claim for these proceeds and has therefore failed to exhaust her administrative remedies. All ERISA plans must provide for a claim and appeal procedure. *See* 29 U.S.C. § 1133. Although ERISA does not expressly state that a plaintiff must exhaust internal appeal procedures, courts have almost uniformly held that the exhaustion of these procedures is a prerequisite for the initiation of a civil action for benefits. *See Counts v. Am. Gen. Life & Accident Ins. Co.,* 111 F.3d 105, 108 (11th Cir.1997); *Springer v. Wal–Mart Assocs.' Group Health Plan,* 908 F.2d 897, 899 (11th Cir.1990); *see also* Ronald J. Cooke, *ERISA Practice & Procedure,* § 8:19 (2d ed.2005). However, a district court may excuse the exhaustion requirement if administrative remedies would be futile. *Counts,* 111 F.3d at 108.

■■■ Sections 7.04 and 7.14 of the Fund Plan outline its administrative appeal pro-

---

7. Central Health and Welfare Fund conflated whether defensive or complete preemption should apply in this case. In doing so, Central Health and Welfare Fund argued that Plaintiff's state law claims should be preempted. The court has carefully reviewed the Complaint and finds that Plaintiff does not actually set forth *any* state law claim that would be subject to defensive preemption. The only portion of the two-page Complaint that could be construed as setting forth any state law claim is as follows:

The designation of a beneficiary in a policy of life insurance has been deemed to [b]e in the nature of a declaration of a trust. 44 Am.Jur.2d *Insurance* 1720. When the sole Beneficiary predeceases the insured, the oc-

currence is treated as a lapse[d] trust and the proceeds upon the death of the insured are payable to the insured's estate. 44 Am. Jur.2d *Insurance* 1720.

Although the court is mindful that it must construe *pro se* pleadings liberally, *see Drew v. Dep't of Corr.,* 297 F.3d 1278, 1285 (11th Cir.2002), it cannot find that citations to a treatise that summarizes general trends in the law are adequate to set forth a state law claim. Instead, the court believes Plaintiff likely offers the authorities cited above to show why Central Health and Welfare Fund made a wrong decision as to her benefits claim. Accordingly, the court will consider Plaintiff's argument as it evaluates the merits of her wrongful denial claim.

**1378**

cedure. Albert E. Nelson ("Nelson"), Benefits Director for the Pension Fund, avers that Plaintiff never initiated an administrative claim for benefits. Plaintiff also acknowledges that she has not filed a claim for benefits under the Fund, asserting that she believed an attorney, Karla Y. Vogel, was going to submit the claim on her behalf. The court can find no evidence in the record that shows anyone ever submitted an administrative claim on Plaintiff's behalf. Furthermore, Plaintiff has not asserted that administrative remedies would be futile in this case. In fact, Nelson represents that all claims filed for benefits under the Fund should have been filed by April 8, 2001, but the Fund will excuse this deadline and consider Plaintiff's claim now.

Because Plaintiff has not exhausted her administrative remedies and has not shown the court that such remedies would be futile, the court GRANTS Central Pension Fund's Motion to Dismiss Plaintiff's claim for wrongful denial of benefits from the Fund.

## IV. *Defendants' Motion for a Protective Order*

Defendants have moved for a protective order and request that the court limit discovery sought by Plaintiff in this matter. Pursuant to Federal Rule of Civil Procedure 26, the court may issue any order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that the scope of the disclosure or discovery be limited to certain matters." Fed.R.Civ.P. 26(c)(4).

On February 25, 2005, Plaintiff served Defendants with Interrogatories, which request information on such topics as local union rules and disclaimer statements. Defendants argue that these Interrogatories request information outside the administrative record, which contains all the relevant information necessary for the court to evaluate whether Defendants made a proper decision in denying Plaintiff's claim for benefits. Generally, the court should not resolve an eligibility question on the basis of evidence not presented to the administrator of an ERISA plan and thus should consider only the administrative record. *Jett v. Blue Cross & Blue Shield, Inc.,* 890 F.2d 1137, 1140 (11th Cir.1989). Because the Interrogatories seek information that is irrelevant to the issues in this case and to produce such information would be a waste of Defendants' resources, Defendants do not need to respond to Plaintiff's Interrogatories. Defendants' Motion for a Protective Order is GRANTED.

## V. *Defendant Central Health and Welfare Fund's Motion to Dismiss or Alternatively for Summary Judgment*

Defendant Central Health and Welfare Fund has moved to dismiss or alternatively for summary judgment as to Plaintiff's claim that benefits from the Policy were not properly distributed to Mr. Harris's estate. Central Health and Welfare Fund requests that the court review the administrative record in determining whether Plaintiff has a viable claim for benefits, thus the court will treat the motion as one for summary judgment. *See generally* Fed.R.Civ.P. 56(c).

### A. Applicable Legal Standard

Summary judgment is proper "if . . . there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court is mindful that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* The plaintiff must do more than show some level of doubt as to the material facts. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505. As such, the non-movant may not avoid summary judgment with evidence that is "merely colorable or is not significantly probative." *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1196 (11th Cir.1997).

If the nonmoving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the court must enter summary judgment for the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, "Rule 56(e) ... requires the nonmoving party to ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)).

### B. Wrongful Denial of Benefits

Plaintiff asserts that Central Health and Welfare Fund wrongfully denied Policy benefits. Central Health and Welfare Fund contends its denial was proper under the Policy Plan's terms. As previously set forth, a plaintiff may bring an action "to recover benefits due to [her] under the terms of [a] plan." 29 U.S.C. § 1132(a)(1)(B).

Before reviewing whether the denial of benefits to Plaintiff was improper, the court must first determine what standard of review to apply. ERISA provides no standard for reviewing decisions of plan administrators or fiduciaries. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). However, the Supreme Court has established three distinct standards for reviewing decisions: (1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where the plan grants the administrator discretion but the administrator operates under a conflict of interest. *See id.* at 115, 109 S.Ct. 948; *Williams v. BellSouth Telecomms., Inc.,* 373 F.3d 1132, 1134 (11th Cir.2004).[8]

Central Health and Welfare Fund contends that the arbitrary and capricious standard of review is the applicable standard in this case. The Eleventh Circuit Court of Appeals has simplified the court's task by setting forth a step-by-step ap-

---

8. The Eleventh Circuit has summarized the standards of review:

*De novo* review ... offers the highest scrutiny (and thus the least judicial deference) to the administrator's decision. In fact, we accord *no* deference there, since, no judgment/discretion was exercised in making the determination (*i.e.,* there is no discretion to which we would defer).

In contrast, where the administrator has discretion (*i.e.,* applies his own judgment) in making plan decisions, we review under the arbitrary and capricious standard (which is substantively the same as the "abuse of discretion" standard). We use it to avoid judicial second guessing/intrusion by according the most judicial deference (and thus, the least judicial scrutiny).

Finally, where the administrator has discretion but exercises it under a conflict of interest, we apply "heightened arbitrary and capricious" review. There we apply a level of deference (and conversely, scrutiny) somewhere between what is applied under the *de novo* and "regular" arbitrary and capricious standards.

*Williams,* 373 F.3d at 1137 (internal citation omitted).

proach for use in reviewing *all* ERISA plan benefit denials. (1) The court should apply the *de novo* standard to determine whether the claim administrator's benefits denial decision is wrong. If it is not, then the court's inquiry ends and the decision is affirmed. (2) If the administrator's decision is wrong, then the court must determine whether the administrator was vested with discretion in reviewing claims. If not, then the court's inquiry ends and the decision is reversed. (3) If the decision was wrong and the administrator was vested with discretion in reviewing claims, then the court must determine whether reasonable grounds supported the decision. If not, then the court's inquiry ends and the decision is reversed. (4) If the decision was based on reasonable grounds, then the court must determine whether the administrator operated under a conflict of interest. If not, the court's inquiry ends and the decision is affirmed. (5) If there is a conflict of interest, then the court must apply the heightened arbitrary and capricious review to the decision and either affirm or deny it. *See Williams,* 373 F.3d at 1138.

### 1. *Was Central Health and Welfare Fund's Decision Wrong?*

■■■ The court has conducted a *de novo* review of the administrative record reviewed by Central Health and Welfare Fund in reaching its decision to deny Policy benefits to Plaintiff. As noted above, the court is not permitted to resolve an eligibility question on the basis of evidence not presented to the administrator of an ERISA plan, *Jett,* 890 F.2d at 1140, and has therefore relied on the contents of the administrative record before Central Health and Welfare Fund. The Policy Plan states that:

[i]t is the responsibility of Each Covered Participant to supply the Fund with properly executed enrollment forms as required by the Fund, designating the beneficiary of any benefit described in this Article. If a Covered Participant desires to change the designated beneficiary who had been previously designated on the enrollment card, then, it is his responsibility to provide the Fund with a properly executed Request for Change of Beneficiary Card.

The Plan further provides:

[i]f a Covered Participant fails to execute proper enrollment forms, then, at his death, benefits will be payable to the first surviving class as follows: 1. Covered Participant's Spouse; 2. Covered Participant's Children, in equal shares; 3. Covered Participant's Parents, in equal shares; 4. Covered Participant's Siblings, in equal shares and 5. Covered Participant's Estate.

In this case, Mr. Harris did not fail to designate a beneficiary but simply failed to change his beneficiary after his designated beneficiary died. The Plan documents are silent as to whether the death of a beneficiary is equivalent to a participant's failure to designate a beneficiary, but the Central Health and Welfare Plan Trustees interpreted the Plan in this way. Plaintiff argues the Trustees' decision was wrong. The court finds that the Trustees' decision was not mandated one way or the other under the Policy Plan because no decision was clearly prescribed. Accordingly, the court will move to the next level of analysis.

### 2. *Did Central Health and Welfare Plan have discretion?*

■■■ The Central States Health and Welfare Fund Trust Agreement (the "Agreement") contains discretionary grants of authority to the Trustees to administer the Policy and decide benefit claims. In Article IV, § 1, the Agreement states that "[t]he Trustees shall have authority to control and manage the operation and administration of the Trust in accordance with applicable law." In Arti-

cle IV, § 9, the Agreement states that "[t]he Trustees by majority action, shall have the power to construe the provisions of this Agreement and the terms and regulations of the Health and Welfare Plan; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers." Additionally, the Policy Plan grants discretion to the Trustees to interpret the Policy Plan. Based on the plain language of the Trust Agreement and the Policy Plan, the court finds that Central States Health and Welfare Fund had discretion.

**3. *Was Central States Health and Welfare Fund's decision reasonable?***

 In analyzing whether Central Health and Welfare Fund's decision was reasonable, the court must simply evaluate if defendant had a reasonable basis for the decision. "It is irrelevant that the court or anyone else might reach a different conclusion." *Turner v. Delta Family–Care Disability and Survivorship Plan,* 291 F.3d 1270, 1274 (11th Cir.2002). Plaintiff asserts that Central Health and Welfare Fund should have made a beneficiary determination based on the general trends in insurance law as set forth in American Jurisprudence. The court does not agree with Plaintiff's assertion that it was unreasonable for the Trustees to make a decision contrary to that set forth in American Jurisprudence and finds that the Trustees based their decision on rational interpretations of the Policy Plan. Accordingly, Central Health and Welfare Fund's determination to deny benefits to Mr. Harris's estate was reasonable.[9]

In sum, the court finds that, even if Central Health and Welfare Fund's determination was wrong, its decision was reasonable and was therefore not arbitrary and capricious. Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's wrongful denial claim under the Policy.

**VI. *Summary***

For the foregoing reasons, Plaintiff's Motion to Remand [Doc. No. 2] is DENIED; Defendant Central States, Southeast and Southwest Areas Health and Welfare Fund's Motion to Dismiss or Alternatively for Summary Judgment [Doc. No. 8] is GRANTED; Defendant Central States, Southeast and Southwest Areas Pension Fund's Motion to Dismiss Without Prejudice [Doc. No. 9] is GRANTED; and Defendants' Motion for a Protective Order [Doc. No. 13] is GRANTED. This case is hereby DISMISSED.[10]

9. Because the court has determined that Central Health and Welfare Fund's decision was reasonable, it need not further inquire as to whether Defendant acted in its own self-interest. If the court had engaged in this additional analysis, however, there is evidence in the record that the Central Health and Welfare Fund does not operate for profit and the Trustees' decisions do not financially benefit them, facts which indicate that Defendant did not have a conflict of interest.

10. The court recognizes that Defendant McDougall has not filed any dispositive motions. Nevertheless, the court finds that its dispositive holdings with regard to Plaintiff's claim for benefits under both the Policy and the Fund would also apply as to her claims against Defendant McDougall.