[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 03-14386

————————————————

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 16, 2004
THOMAS K. KAHN
CLERK**

D.C. Docket No. 01-02358-CV-B-S

MARCIA WILLIAMS,

Plaintiff-Appellant,

versus

BELLSOUTH TELECOMMUNICATIONS, INC.,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama

————————————————

**(June 16, 2004)**

Before EDMONDSON, Chief Judge, HULL, Circuit Judge, and EDENFIELD[*],
District Judge.

EDENFIELD, District Judge:

———————————

[*] Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia,
sitting by designation.

## I. Background

Claiming debilitating depression, appellant Marcia Williams applied for benefits under her employer's (BellSouth Telecommunications, Inc.'s) disability plan. Unconvinced that her impairments completely prevented her from working, Kemper Risk Management Services, Inc. (Kemper) -- the company BellSouth hired to administer claims[1]-- denied the claim because she did not meet the plan's disability definition.[2]

Invoking Employee Retirement Income Security Act (ERISA) jurisdiction, 29 U.S.C. §§ 1001, *et seq.*, Williams challenged that decision in district court. Applying the arbitrary and capricious review standard, the district court found that available medical evidence supported Kemper's non-disability determination, so it granted BellSouth summary judgment. Williams appeals, contending that: (1) the district court applied the wrong standard of review and (2) even under the arbitrary and capricious standard, the denial of benefits was improper.

---

[1] Kemper is a company independent of BellSouth. Prior to its contract for Kemper's services, BellSouth processed its own claims.

[2] BellSouth's plan defines "Disability" as "a medical condition which makes a Participant unable to perform any type of work as a result of physical or mental illness or an accidental injury."

## II. Analysis

### A. Standard of Review on Appeal

We review the district court's ruling *de novo*, applying the same legal standards that governed the district court's disposition. *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003); *Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260, 1267 (11th Cir. 2003).

### B. ERISA Review Standard

ERISA provides no standard for reviewing decisions of plan administrators or fiduciaries. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989); *Shaw v. Connecticut Gen. Life Ins. Co.*, 353 F.3d 1276, 1282 (11th Cir. 2003); *Marecek v. BellSouth Telecomms., Inc.*, 49 F.3d 702, 705 (11th Cir. 1995). But *Firestone* established three distinct standards for reviewing administrators' plan decisions: "(1) *de novo* where the plan does not grant the administrator discretion [*i.e.*, does not exercise discretion in deciding claims;] (2) arbitrary and capricious [where] the plan grants the administrator [such] discretion; and (3) heightened arbitrary and capricious where [the plan grants the administrator such discretion but] ... [he has] ... a conflict of interest."[3] *HCA Health Servs. of Georgia., Inc. v. Employers Health Ins. Co.*, 240

---

[3] *Firestone* actually addressed the standard for judicial review of an administrator's plan interpretations (*i.e.,* its interpretation of what plan provisions mean), whereas here we are dealing with a plan administrator's factual determinations (*i.e.*, that Williams was in fact not disabled under

3

F.3d 982, 993 (11th Cir. 2001) (*quoting Buckley v. Metro. Life*, 115 F.3d 936, 939 (11th Cir. 1997)); *Shaw*, 353 F.3d. at 1282.

Williams contends that, because BellSouth both funded and administered the disability benefits plan,[4] a conflict of interest existed, so the district court erred by not reviewing the denial of benefits using the "heightened" arbitrary and capricious standard.

We note that in most cases where a company both administers and funds a plan, a conflict of interest arises, thus triggering heightened arbitrary and capricious review. *See Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1562 (11th Cir. 1990); *Yochum v. Barnett Banks, Inc. Severance Pay Plan*, 234 F.3d 541, 544 (11th Cir. 2000); *Levinson v. Reliance Standard Ins. Co.*, 245 F.3d 1321, 1325-26 (11th Cir. 2001) (Where administrator of benefits plan governed by ERISA pays out to participants out of its own assets, a conflict of interest exists between its

---

the plan because she was not completely unable to work). Courts, however, read *Firestone* broadly, applying its three levels of review to both plan interpretations and factual determinations. *Shaw*, 353 F.3d at 1284-85; *Torres v. Pittston Co.*, 346 F.3d 1324 (11th Cir. 2003); *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1451 (11th Cir. 1997) ("[W]e consistently have upheld application of the abuse of discretion standard of review to determinations involving both plan interpretations and factual findings under ERISA"). Sometimes courts complicate this area by employing a third term, "plan adjudication," which can encompass plan interpretation, a factual determination, or both. For clarity, we avoid use of the term "adjudication" here.

[4] BellSouth's disability plan is not a trust or otherwise self funded. Rather, any benefits are paid directly out of BellSouth's operating expenses. It is therefore, not in BellSouth's *financial* interest to approve disability benefit claims.

4

fiduciary rule and its profit-making role, and accordingly, a heightened arbitrary and capricious standard applies in reviewing administrator's discretionary denial of benefits under the plan).

But here BellSouth -- though it retained the role of "*plan* administrator"-- employed Kemper as its "*claim* administrator." Kemper processed and decided claims that BellSouth would pay out. *See Smathers v. Multi-Tool, Inc*., 298 F.3d 191, 197 n. 10 (3rd Cir. 2002) (distinguishing "plan administrator," the employer providing the plan, and "claim administrator," the company retained to decide claims). Or, as BellSouth explained in its disability plan description, it

> delegated to Kemper ... the duty to administer all claims for plan benefits for [BellSouth] plan participants. Kemper is the named fiduciary under the plan with complete authority to review all denied claims for benefits in exercising such fiduciary responsibilities....

By doing this, BellSouth contends, it eliminated the conflict of interest (and thus the need for the heightened arbitrary and capricious review) because Kemper, a disinterested party, decided what claims BellSouth would pay.

The question for us, then, is whether a plan administrator (BellSouth) can avoid the heightened arbitrary and capricious standard applicable to conflict of interest cases by delegating its claim processing duties to a third party (Kemper).

To answer that we turn to *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1141

(11th Cir. 2001) There, we held the heightened arbitrary and capricious standard applied where a plan administrator, despite delegating its claim processing duties to a third party, exercised the "ultimate authority to determine for itself whether payments should be made out of its own assets." Whether heightened arbitrary and capricious review applies, then, depends on whether the plan administrator (*i.e.*, the party with the conflict of interest) retains control, or the ability to control the ultimate disposition of the claim.

*Buce* illuminates the dividing line between conflicted plans (where the administrator retains the ability to ultimately control whether to pay out on a claim) and non-conflicted plans (where the administrator does not). Williams argues that BellSouth retained such control because Kemper was actually BellSouth's common law agent, as opposed to an independently acting contractor. But we need not venture down that state-law path because the "*Buce* rule" (if the plan-payout funding source retains ultimate control over the pay-out decision, the "heightened" review standard applies) adequately covers all the relevant bases here.

Turning to the BellSouth/Kemper contract, we note that it plainly spells out the scope of Kemper's independence and discretion and, more importantly, the extent of BellSouth's retained control. In the "Extent of Kemper's Authority" section, two provisions explain Kemper's and BellSouth's relative authorities under the contract.

One provision states that "Kemper shall adjudicate all Plan claims and appeals in accordance with written claim review procedures provided by [BellSouth]."

Williams argues that this gives BellSouth control over how Kemper disposes of claims, and thus it is no different than BellSouth processing the claims itself since Kemper is using the same guidelines and procedures that BellSouth employed before delegating its claims duties to Kemper. But there is a difference between giving general instructions applicable to the adjudication of all claims and having actual control over the disposition of specific claims. *Buce* requires application of the heightened arbitrary and capricious standard only with the latter.

Plus, it is difficult to imagine a situation in which a principal employing another to do a job would give no instructions at all. BellSouth's "claim review procedure" is no more than general instructions for Kemper to apply in adjudicating all claims. It did not give BellSouth the ability to directly affect the disposition of specific claims. Thus, the general instructions by themselves do not place the BellSouth-Kemper arrangement over *Buce's* dividing line.

But the BellSouth-Kemper contract also provides that, "[w]here specific instructions as to a particular matter have been given [by BellSouth], Kemper is charged with strict compliance with such instructions, no matter how broad its general powers may otherwise have been." This provision, plainly construed, grants

7

BellSouth the power to give Kemper specific instructions as to specific claims, which Kemper then must unquestioningly follow.

Furthermore, nothing appears to limit BellSouth's ability to give any instruction it wants, including the instruction to grant or deny a claim.[5] This means that BellSouth has the same ability as the administrator in *Buce* to control any aspect of the disposition of claims it chooses.

Yet, there is a notable distinction. While the administrator in *Buce* expressly claimed the power to dispose of specific claims for itself, BellSouth has only expressly claimed the right to tell Kemper how to dispose of claims. Technically, then, BellSouth escapes *Buce*'s reasoning, since it does not have the ability to deny claims itself.

Still, that *technical* distinction does not change the ultimate truth -- BellSouth nevertheless holds the ultimate power to do with claims as it wants; it just has to tell Kemper when to do it. As such, the conflict between BellSouth's fiduciary and profit-making interest, which triggers the heightened standard of review, remains. *See Buce*, 247 F.3d at 1141.

---

[5] Williams points out that in the past, BellSouth has exercised this power by giving Kemper the specific instruction to deny a claim. BellSouth disputes that fact, claiming that it only did so upon court order. We need not resolve this issue because BellSouth, under the contract itself, in fact retained the ability to control all aspects of claims dispositions.

This does not mean that, to avoid the heightened standard, there must be *no* contact at all. Some contact and interaction, the district court correctly noted, "is incidental to the contractual relationship" and thus a "certain amount of contact between the plan administrator ... and the claims administrator ... is necessary and appropriate." But where the plan administrator's abdication of its claims processing duty is only superficial (*i.e.*, it retains the ultimate power to affect the disposition of specific claims), the heightened arbitrary and capricious standard of review should still apply.

It follows that the district court should have applied the heightened, rather than the "regular" arbitrary and capricious standard.

## C. Application

That the district court applied the wrong standard, however, does not necessarily entitle Williams to relief. She must still show that such error prejudiced her, *see* F.R.Civ.P.61, and thus would have prevailed under heightened arbitrary and capricious standard. This she failed to do. We addressed essentially this same situation in *Levinson*, 245 F.3d at 1325-27.

As was the case here, the *Levinson* employer (Reliance) both funded and administered its disability plan, thus creating a conflict of interest between its fiduciary and profit-making interest. *Id.* at 1326. Accordingly, we found the

9

heightened arbitrary and capricious review standard to apply. *Id.*

But the distinctions between the heightened arbitrary and capricious, arbitrary and capricious, and *de novo* standards of review have become difficult to discern over time. Given the semantic imprecision that has seeped into this area, we first pause to clarify these concepts before attempting to apply them.

*De novo* review, which we employ in reviewing "no-discretion" plan decisions, offers the highest scrutiny (and thus the least judicial deference) to the administrator's decision. In fact, we accord *no* deference there, since, no judgment/discretion was exercised in making the determination (*i.e.,* there is no discretion to which we would defer).

In contrast, where the administrator has discretion (*i.e.,* applies his own judgment) in making plan decisions, we review under the arbitrary and capricious standard (which is substantively the same as the "abuse of discretion" standard, *Shaw*, 353 F.3d at 1284-85 n. 6). We use it to avoid judicial second guessing/intrusion by according the most judicial deference (and thus, the least judicial scrutiny).

Finally, where the administrator has discretion but exercises it under a conflict of interest, we apply "heightened arbitrary and capricious" review. There we apply a level of deference (and conversely, scrutiny) somewhere between what is applied under the *de novo* and "regular" arbitrary and capricious standards.

In *HCA*, we incorporated these varying levels of judicial review in a multi-step approach. For clarity, we recapitulate that approach (240 F.3d at 993-95) in a simpler version here, for use in judicially reviewing virtually *all* ERISA-plan benefit denials:[6]

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision);[7] if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong,"[8] then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds[9] supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

---

[6] We thus mean both benefits denials based on plan interpretations as well on factual determinations, since many, if not most determinations will involve "issues of both plan interpretation *and* fact," *Shaw*, 353 F.3d at 1285, and we will otherwise wait to be confronted by principled exception to say otherwise here.

[7] *See HCA*, 240 F.3d at 993 n. 23.

[8] We have also used the phrase "'wrong' from the perspective of *de novo* review," *Brown*, 898 F.2d at 1566 n. 12; *see also HCA,* 240 F.3d at 993, and we mean the same here.

[9] *See HCA*, 240 F.3d at 994 (even if the court finds the claimant's determination reasonable, that "does not trump the claims administrator's wrong interpretation ... because the plan documents explicitly grant [him] discretion to interpret the plan").

(5) If there is no conflict, then end the inquiry and affirm the decision.
(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

We described "heightened arbitrary and capricious review" *supra* as somewhere between the *de novo* and "mere" arbitrary and capricious standards. But where is that "somewhere"? Supreme Court decisions have not explained it. *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 390-94 (3rd Cir. 2000). "[C]ircuit courts agree that a conflict of interest triggers a less deferential standard of review... [but] .... differ over how this lesser degree of deference alters their review process." *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir.1996).

Our circuit, at least in plan *interpretation* cases (unlike this, a *factual determination* case), has incorporated a two step, burden-shifting, approach:

(1) The claimant shows that the administrator of a discretion-vesting plan is conflicted.

(2) The administrator then proves that his plan interpretation was not tainted by self-interest.

*See Brown*, 898 F.2d at 1566.

A wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the administrator at the expense of the claimant. *Id*. at 1566-67. But, if the administrator can demonstrate a routine practice or give

12

other plausible justifications -- such as benefitting the interests of other beneficiaries -- judicial deference to it may be granted, since "[e]ven a conflicted [administrator] should receive deference when [he] demonstrates that [he] is exercising discretion among choices which reasonably may be considered to be in the interests of the participants and beneficiaries." *Id*. at 1568.

In both *Shaw* and *Levinson*, two factual-determination cases, we did not say whether *Brown*'s "heightened arbitrary and capricious," burden-shifting approach should be applied to factual determination cases like this. In *Levinson*, we mentioned the "heightened" standard because a conflict existed there, 215 F.3d at 1326, but we later (after determining that the administrator's decisions were "*de novo* wrong") concluded that the administrator had no reasonable basis for its decisions, so they did not even survive the more (judicially) deferential "arbitrary and capricious" standard. Hence, there was no need to apply the "heightened" arbitrary and capricious standard, though we somewhat clouded the discussion there by referencing the administrator's "self-interest" in our concluding passage on that score. *Id.* at 1327.

We also had no occasion to so conclude in *Shaw*. As we will now show, we find the same to be the case here (hence, we leave the issue to another day, but proffer

the above framework to assist future determinations).[10]

Turning back to the instant case, we note that Kemper reviewed the medical records of several doctors, including Williams's own doctor, Dr. Michael Holt, in making its benefits-denial decision. None indicated that Williams was completely incapable of working.

Kemper also had Williams examined by an independent medical examiner (IME), Dr. Charles Whestall. She indicated to Whestall that she was engaging normally in the significant activities of daily living, including caring for two young children and a granddaughter, cooking all meals, performing housework, tending to finances, and attending religious services. And instead of claiming that she could not work at all, she said that she would like to change to a less stressful job. Whestall concluded from her testing that her stress was "not overwhelming her capacity for coping."

Accordingly, we cannot say that Kemper's no-disability determination was *de novo* wrong under the terms of BellSouth's disability plan. Unlike the plan administrator in *Levinson*, Kemper thoroughly gathered and reviewed medical evidence concerning Williams's condition, including that of an IME.

---

[10] Much discussion on the subject is found in *Thomas v. SmithKline Beecham Corp.*, 297 F.Supp.2d 773, 788-89 (E.D.Pa. 2003).

14

Also, there was more than sufficient medical evidence to contradict Williams's claim that she was unable to perform "any kind of work" as required for disability benefits under the BellSouth Plan. Because no grounds exist to disturb Kemper's determination under the *de novo* review standard, we need not review it under the more deferential ("mere" or "heightened" arbitrary and capricious) standard, much less reach the parties' remaining arguments.

## III. Conclusion

Although the district court erred in applying the wrong standard, it reached the right result, so we ***AFFIRM*** its judgment. *See Watkins v. Bowden*, 105 F.3d 1344, 1353 n. 17 (11th Cir. 1997) (appellate court may affirm district court on any ground, even one not considered); *accord Mann v. Haigh*, 120 F.3d 34, 36 (4th Cir. 1997) ("we may affirm the judgment of the district court on any basis that the record fairly supports").

EDMONDSON, Chief Judge, concurs in the result.