### Teresa A. COOK, Plaintiff,

v.

### BELLSOUTH CORPORATION and Administrator of Bellsouth Long Term Disability Plan/Disability Pension Plan, Defendants.

### Civil Action No. 1:04–CV–0550–JOF.

United States District Court,
N.D. Georgia.

June 22, 2005.

Daryl J. Morton, Macon, GA, for Plaintiff.

Sheldon W. Snipe, BellSouth Corporation, Legal Department, Atlanta, GA, for Defendants.

## OPINION AND ORDER

FORRESTER, Senior District Judge.

This matter is before the court on Defendants' motion for summary judgment [7].

## I. Statement of the Case

### A. Procedural History

Plaintiff, Teresa A. Cook, filed suit against Defendants, BellSouth Corporation and Administrator, Bell South Long Term Disability Plan/Disability Pension Plan, on February 26, 2004 seeking to recover benefits under an employer-sponsored disability plan pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.* Defendants filed a motion for summary judgment on December 20, 2004.

### B. Facts

Plaintiff was employed as a non-salaried employee of Defendant BellSouth from 1971 through 1992, when at the age of thirty-eight she began drawing disability benefits. Kemper National Services, Inc., now known as Broadspire Services, Inc., served as the third-party administrator for BellSouth's Long–Term Disability Plan for Non–Salaried Employees ("the Plan") and pension plan. BellSouth's plan provides disability pension benefits to participants who become totally disabled due to sickness or injury other than accidental injury arising out of, and in the course of, employment with a participating company. Disability pensions are to continue so long as the employee cannot resume active service with a participating company or affili-

ate; if active service is so resumed, disability benefits will cease. In order to qualify for these Plan disability benefits, an employee is required to exhaust 52 weeks of benefit coverage provided by Defendant BellSouth's short-term disability benefits plan, as well as provide the claims administrator with periodic updates and medical information as requested. Plaintiff was approved for short-term disability benefits in July 1991 for fibromyalgia and chronic fatigue syndrome. Once 52 weeks of short-term benefits had been exhausted, Plaintiff was approved for long-term disability benefits under the Plan. Plaintiff received Plan benefits from July 6, 1992 through September 19, 1997.

On May 2, 1997 a Kemper claims examiner sent Plaintiff a letter stating that, pursuant to the Plan, it needed new, current information on Plaintiff's medical condition. The May 2 letter also asked Plaintiff to complete and sign a medical release authorization and disability questionnaire. Plaintiff did not respond to the May 2, 1997 letter. Kemper sent a June 2, 1997 letter to Plaintiff reminding her that the Plan required maintenance of objective medical information about her condition. The June 2 letter repeated the earlier request for a signed and completed release and questionnaire, and further informed Plaintiff that benefits could not be paid for any period of time in which she was not under a qualified physician's care. Thus, continued eligibility could be tested under the Plan through current treating physician records, to be obtained through the release. Plaintiff did not respond to the June 2 letter. A third letter was sent to Plaintiff by Kemper on July 1, 1997 asking for the completed release and question-

naire, as well as instructing Plaintiff to have her treating physician fill out an attending physician's statement and mental health functional assessment. The July 1 letter reminded Plaintiff that continued benefits depended on her taking care of herself and seeking professional care. Plaintiff was also asked to return the various forms by July 30, 1997. By letter of July 2, 1997, Plaintiff was informed that it was imperative that she contact Kemper to discuss the outstanding forms and information, and that eligibility for benefits depended on compliance with Kemper's requests. Plaintiff disputes ever receiving these three letters.[1]

On July 18, 1997, Kemper sent Plaintiff a letter memorializing an earlier, July 11 telephone conversation between Plaintiff and Kemper claims examiner Sharon Hoyle regarding the requests for medical information. Hoyle confirmed that Plaintiff understood that the attending physician's statement and mental health assessment needed to be completed by her treating physician and returned to Kemper by August 15, 1997. While Plaintiff contends that these forms were duly delivered to her treating physician with the understanding that the doctor would submit the forms to Kemper, Kemper never received these forms or the requested information. Kemper sent an August 19, 1997 letter to Plaintiff warning her that she was at risk of losing Plan disability benefits due to this noncompliance, and gave Plaintiff a deadline of September 19, 1997 to turn over the forms and information. Again, Plaintiff contends that she never received this letter. As Kemper never received these forms, it terminated Plaintiff's benefits on September 19, 1997.

---

1. Plaintiff attempts to dispute various facts relating to these letters on the basis of non-receipt. While Plaintiff's contention that she did not receive these three Kemper letters is duly recognized, the contention does not amount to a denial of Defendants' allegation that the letter was sent or that Plaintiff did not respond. Accordingly, these facts have been included in the recitation.

The Plan provides sixty days for appeal of the denial decision, and more than sixty days elapsed with no appeal from Plaintiff. In December 1999, however, Plaintiff submitted a request that the decision to deny benefits be reconsidered. The appeals period was reopened on January 11, 2000 for sixty days to allow Plaintiff to submit medical information showing she was totally disabled within the meaning of the Plan. Through counsel, Plaintiff submitted a March 10, 2000 letter appealing the denial and asking for additional time to obtain medical information. This request was granted and Plaintiff was given until July 20, 2000 to turn over her information. Another extension of time was sought, and the deadline was extended to August 20, 2000. By letter of September 26, 2000, after reviewing Plaintiff's submitted medical information, the appeal review committee upheld the 1997 denial of disability benefits to Plaintiff because she did not meet the Plan's definition of disabled. Kemper informed Plaintiff that this denial was final and the case was closed. On October 6, 2000 and January 21, 2001, Plaintiff sent to Kemper additional medical information from Doctors Balch, Gatell, and Walker.

## C. Contentions

Plaintiff contends that Defendants abused their discretion by terminating her benefits under the Plan. Defendants contend that Plaintiff's suit is barred by statute of limitations, and further contend that they did not abuse their discretion in denying benefits based upon the evidence of disability presented to it.

## II. Discussion

### A. Statute of Limitations

■ There is no federal statute of limitations under ERISA for suits to recover benefits. *Harrison v. Digital Health Plan*, 183 F.3d 1235, 1238 (11th Cir.1999).

In this situation, the accustomed practice of the federal courts is to borrow a state statute of limitations for the most analogous state cause of action, so long as it is not inconsistent with federal law to do so. *Id.* The Eleventh Circuit has determined that ERISA actions under § 1132 to recover benefits are most analogous to a breach of contract cause of action. *Id.* at 1241. As Georgia provides a six-year statute of limitations for breach of contract actions, that is the appropriate statute of limitations to utilize in "filling the gap" left by federal law. *Id.*

■ Defendants terminated Plaintiff's disability benefits as of September 19, 1997. Applying the six-year statute of limitations, it would appear that Plaintiff's February 26, 2004 filing of her complaint is untimely. Plaintiff argues, however, that while Defendants may well have terminated her benefits in September 1997, she was unaware of any denial of benefits until June 1998, when she received a letter from Defendants seeking reimbursement of disability benefits erroneously paid to her after September 1997. In *Hembree v. Provident Life and Acc. Ins. Co.*, 127 F.Supp.2d 1265, 1272 (N.D.Ga.2000) (Evans, C.J.), an ERISA cause of action was determined to have accrued from either the actual denial of benefits or from that time at which the ERISA beneficiary became aware of the facts necessary to make out a claim. Taking inferences in favor of Plaintiff, the non-moving party, the court must assume that Plaintiff was not aware that her disability benefits had been terminated until June 1998 when she received the letter asking for reimbursement of excess benefits. Under this measure of time, Plaintiff's February 2004 filing of this claim was within the six-year statute of limitations for § 1132 claims. This court will accordingly consider the merits of Plaintiff's claim.

## B. Record Evidence of Disability

"A civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a)(1)(B). In *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court determined that a § 1132(a)(1)(B) denial of benefits is to be reviewed under a *de novo* standard of review unless the ERISA plan gives its administrator discretion to determine benefit eligibility or interpret plan language. In this case, the parties do not dispute that the Plan does in fact give Defendants discretion to determine eligibility for benefits. In this situation, courts are to review the administrator's determinations under an arbitrary and capricious standard of review. *Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132, 1137 (11th Cir.2004).[2] In reviewing the denial of ERISA benefits, this court must follow a specific line of inquiry. First, the administrator's decision is to be reviewed *de novo* to see if it is wrong-in other words, the court must determine whether it agrees with the administrator's decision. *HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir.2001). If the decision is correct, then there is nothing for a court to do but affirm that decision. *Id.* If the decision was "wrong," but the administrator was vested with discretion, the next step is to determine whether the "wrong" decision was nevertheless reasonable under the arbitrary and capricious standard. *Id.* at 994. If there are no reasonable grounds for the decision, then the administrator's decision must be reversed. *Id.* If there

are reasonable grounds, and there is no conflict of interest on the part of the administrator, his decision must be affirmed. *Id.*

■ A court reviewing an ERISA case generally may only consider the evidence that was actually before the decisionmaker at the time that decision was made. *Jett v. Blue Cross & Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1139 (11th Cir.1989). At the time Defendants first decided to terminate Plaintiff's benefits, there was no medical evidence of Plaintiff's disability before them. Accordingly, there can be no dispute that Defendants' original 1997 decision to terminate benefits was not "wrong" or unreasonable. Through the appeals process, however, Plaintiff presented Defendants with medical records obtained from her doctors, Dr. Stephen Balch and Dr. Brian Cross. In support of her argument that evidence does exist to show disability, Plaintiff points to letters from these doctors in which they opine about her condition. In a March 1, 1999 letter written by Dr. Balch to Plaintiff's counsel, and subsequently submitted to Defendants, Dr. Balch relates his treatment of Plaintiff during 1997 and 1998 and concludes with the following statement: "She apparently has not been able to work since September and her symptoms and examination would certainly be compatible with that sequence of events." Administrative record, Defendants' exhibit D ("Record"), at 143. Dr. Cross also submitted a letter, dated May 13, 1998, in which he opines that Plaintiff is "still disabled from her disease and has been otherwise fairly functional." Plaintiff's exhibit C, at 206.

■ Based upon this evidence, the court cannot find that the plan administrator

---

**2.** There is no allegation in this case that the heightened arbitrary and capricious standard of review appropriate for cases in which the

administrator is operating under a conflict of interest is applicable.

was clearly "wrong" when he made the decision to deny benefits. Dr. Balch's letter does not state his belief that Plaintiff's medical condition renders her unable to work, or even explain how her medical condition inhibits functional abilities. In stating that Plaintiff "apparently" has not been able to work since September, Dr. Balch's letter does not even vouch for the fact that Plaintiff in fact could not work for that period of time. Dr. Cross' statement of disability is even weaker. While Cross opines that Plaintiff is "still disabled," he does not state that Plaintiff's disabilities keep her from working. This failure to testify as to a work-impairing disability is only emphasized by the fact that, within the same sentence, Dr. Cross states that Plaintiff is fairly functional. Thus, the administrator would not be able to decipher from Dr. Cross' statement the manner in which Plaintiff was disabled or her functionality impaired. Moreover, even if this court were to find on a *de novo* basis that the administrator's decision was wrong, given the weakness in these medical opinions, the court would have to conclude that the administrator's decision was reasonable. None of these opinions gives the administrator a reasonable basis upon which to conclude that Plaintiff is unable to resume active working service, and was unable to do so in September 1997.

 After the plan administrator completed the appeals process and affirmed its earlier denial of benefits, Plaintiff attempted to submit additional evidence of disability: further files from Dr. Balch, the records and opinion of Dr. Gatell and Dr. Walker, and Plaintiff's social security files. As discussed above, however, this court is limited to reviewing the evidence that was before the decisionmaker at the time of the challenged decision. *Jett,* 890 F.2d at 1139. It is undisputed that these additional materials were sent after the September 26, 2000 final appeal decision. Plaintiff points to *Shannon v. Jack Eckerd*

*Corp.,* 113 F.3d 208, 210 (11th Cir.1997), and argues that a plan administrator has a continuing obligation to consider new evidence, even if untimely. *Shannon,* however involved a plan administrator's refusal to fund a pancreatic transplant because it was investigational. *Id.* at 210. When the district court concluded that the decision was arbitrary and capricious, it remanded the claim to the plan administrator, and additionally directed that the administrator consider subsequently available evidence on remand. *Id.* Unlike *Shannon,* Plaintiff's claim was never remanded to Defendants for further consideration. Thus, this court must consider itself to be restricted to examining the evidence before the plan administrator when he denied disability benefits. As this court may only review the decision to deny benefits based upon the medical evidence from Dr. Balch and Dr. Cross, the court cannot conclude that the plan administrator acted in an arbitrary and capricious fashion in determining that there was no evidence that Plaintiff was totally disabled on and after September 1997. Accordingly, the court grants Defendants' motion for summary judgment.

## III. Conclusion

Defendants' motion for summary judgment [7] is GRANTED, and the Clerk of Court is DIRECTED to close this case.