[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 3, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10276
Non-Argument Calendar

_____

D. C. Docket No. 03-03328-CV-2-IPJ

HAYWARD LIPSEY,

Plaintiff-Appellant,

versus

UNION UNDERWEAR PENSION PLAN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 3, 2005)

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

After a bench trial, plaintiff Hayward Lipsey appeals the district court's judgment in favor of defendant Union Underwear Pension Plan on his ERISA claim for deferred-vested-pension benefits. After review, we affirm.

## I. BACKGROUND

This case presents one question: whether the defendant's determination that plaintiff Lipsey was not employed for at least ten <u>continuous</u> years was arbitrary and capricious. If the answer to that question is yes, then Lipsey is entitled to deferred-vested-pension benefits. If the answer to that question is no, then Lipsey is not entitled to deferred-vested-pension benefits.

Before discussing the merits of this case, we outline the relevant pension plan, plaintiff Lipsey's work history, and the defendant's determination that Lipsey was ineligible for benefits.

## A. The Pension Plan

Plaintiff Lipsey began working for Winfield Cotton Mill, Inc. ("Winfield") on February 17, 1970. At that time, Lipsey was eligible to participate in the Union Underwear Pension Plan ("the Plan"), which was sponsored by Winfield's parent company, Union Underwear Company.

The Plan provided for five types of pension benefits: (1) normal retirement benefits for those employees who worked until age 65 and had at least ten years of

2

service; (2) early retirement benefits for those employees who worked until age 55 and had at least ten years of continuous service; (3) disability benefits for those employees who worked until age 50, had ten years of continuous service, and had been deemed disabled by the Social Security Administration ("SSA"); (4) postponed retirement benefits for those employees who worked past the age of 65; and (5) deferred-vested benefits for those employees who did not meet any of the four eligibility requirements above but had ten years of continuous service.[1]

Because Lipsey was only 47-years old when he left Winfield in 1982, it is undisputed that the only benefits that he is potentially eligible for are the deferred-vested benefits. It is further undisputed that Lipsey has more than ten years of service with Winfield. The only issue in this case is whether Lipsey has ten years of <u>continuous</u> service with Winfield.

**B.     Lipsey's Employment**

As mentioned above, Lipsey began working for Winfield on February 17, 1970. Lipsey left Winfield on either March 8, 1973, or May 8, 1973. However, he returned to Winfield on June 20, 1973, and remained employed at Winfield until August 24, 1982. This second term of employment (June 20, 1973 to August 24, 1982) lasted nine years, two months, and four days. Thus, Lipsey does not have

---

[1]Deferred-vested benefits are paid after the former employee reaches age 65.

3

ten years of <u>continuous</u> service without counting at least some of his prior employment. Accordingly, the dispute in this case centers around the reason for Lipsey's brief absence in 1973.

If Lipsey's brief absence from Winfield in 1973 was a temporary layoff or a leave of absence with Winfield's permission, then Lipsey's employment with Winfield prior to June 20, 1973, counts toward his years of <u>continuous</u> service, and he would have over twelve years of continuous service. However, if Lipsey was fired or quit in 1973, and was merely rehired on June 20, 1973, then his employment prior to June 20, 1973, does not count toward his years of continuous service. Thus, this case boils down to one simple question – what was the reason for Lipsey's loss of employment in 1973?

## C.    Lipsey is Denied Deferred-Vested Benefits

In 2001, Lipsey requested pension benefit claim forms from Union Underwear, which were not provided. On February 14, 2003, he filed a lawsuit in the Circuit Court of Marion County, Alabama, arguing that the defendant violated ERISA by failing to provide the information he requested, failing to provide benefits, and failing to provide a written explanation as to why he was denied benefits.

After Lipsey filed suit, Beth Tuck, the Director of Benefits for Union

Underwear, conducted a review of Lipsey's claim.[2] Because Winfield was no longer in business, Lipsey's employment file could not be located. Thus, Tuck had to use whatever information was available to determine Lipsey's eligibility for benefits.

In researching Lipsey's eligibility, Tuck located a 1978 benefit statement regarding Lipsey. According to the benefit statement, Lipsey had no earnings applied to his pension calculation in 1971 and 1972. Furthermore, the benefit statement indicated that Lipsey would not become vested in the Plan until June 16, 1983.

Tuck also reviewed an itemized earnings statement from the Social Security Administration ("SSA"). The SSA statement showed that Lipsey's earnings from Winfield were 50% lower during the second quarter of 1973 than his earnings from other quarters in 1973 and that during the second quarter he earned almost as much at Alabama Oak Flooring as he earned at Winfield.

Piecing the information together, the committee concluded that Lipsey either quit or was fired during the second quarter of 1973, and that he was subsequently rehired on June 20, 1973. The committee further concluded that Lipsey did not

---

[2]The Plan is administered by a retirement committee, which has the duty to "interpret the plan, decide all questions of eligibility, and determine the amount, manner and time of payment of any benefits. . . ." The committee currently consists of four persons who are authorized to act in a meeting or in writing without a meeting. Decisions are made by a majority vote.

work for Winfield continuously for ten years and, therefore, was not qualified for deferred-vested-pension benefits. The committee memorialized this conclusion in a letter to Lipsey's counsel:

> According to our records, [Lipsey] was hired in 1970, had a break in service in 1973, and terminated in 1981.[3] Because he had a break in continuous service, all service prior to 1973 is lost. Using these dates, Mr. Lipsey is not eligible for a pension benefit under the terms of the Pension Plan.

## D. The District Court

The district court conducted a bench trial on Lipsey's ERISA claim. At the trial, Lipsey, Tuck, and George Wallace, a former co-worker of Lipsey, testified as to the reasons for Lipsey's absence from Winfield in 1973.

At the close of evidence, the district court ruled from the bench. Noting that the evidence showed that Lipsey had a break in service in 1973 and that no evidence showed that this break was approved or due to a disability or sickness, the district court found that Lipsey did not have ten years of continuous service as required by the Plan to be entitled to a pension.[4] Specifically, the district court stated:

---

[3]Although it is of no consequence to the outcome of this appeal, Mr. Lipsey was "terminated" from Winfield on August 24, 1982.

[4]The district court also denied Lipsey's claim that the Union Pension Plan failed to provide him with claims forms, noting that because any letter requesting pension benefits was treated as a claim, there were no damages to Lipsey.

Okay. I am going to find that there was not ten years – that Mr. Lipsey did not have ten years of continuous service . . . as required by the plan for him to be entitled to deferred vested pension.

I mean, he was not vested at the time he quit. And I will say, whether he agrees with me or not, he did quit in 1982. . . .
. . .

So, although the records are sparse, they all reflect that an event took place in either March or May of 1973, by which Mr. Lipsey became unemployed or his employment was terminated. One way or another, he was detached from. . . [the] Winfield plant, and was rehired on 6/20/73.

I don't have anything showing that it was leave of absence that was approved or disability or sickness. I have statements from Mr. Lipsey that, at some point, the plant was closed but he doesn't know when. Mr. Wallace doesn't know when it was.

Because the district court found that Lipsey did not have the ten years of continuous service he needed to be entitled to benefits, the district court concluded that the committee's decision was correct, and accordingly, there was "no need to get into whether or not there needs to be a de novo . . . [or] a heightened standard of review. . . ."

Lipsey appealed.

## II. DISCUSSION

This Court reviews the district court's review of an ERISA plan administrator's benefits eligibility determination "de novo, applying the same legal standards that governed the district court's disposition." Williams v. Bellsouth

Telecomms., Inc., 373 F.3d 1132, 1134 (11th Cir. 2004) (citations omitted). The Plan gave the retirement committee discretion to "interpret the plan, decide all questions of eligibility, and determine the amount, manner and time of payment of any benefits. . . ." Thus, we review the exercise of that discretion to determine whether the defendant's denial of benefits was arbitrary and capricious. Id. at 1137 ("[W]here the administrator has discretion (i.e., applies his own judgment) in making plan decisions, we review under the arbitrary and capricious standard (which is substantively the same as the 'abuse of discretion' standard . . .). We use it to avoid judicial second guessing/intrusion by according the most judicial deference (and thus, the least judicial scrutiny).").

In this case, we simply cannot say that the defendant's determination that Lipsey did not have ten years of continuous service was arbitrary and capricious. The fact remains that although Lipsey's personnel file was missing, the committee was within its discretion to determine that the available evidence indicated that Lipsey was fired or quit in 1973.[5] Lipsey is unable to point to any evidence, other than his own, unspecific testimony, as to the cause of his absence from Winfield in 1973. Given our highly deferential standard of review, we conclude that the

_____

[5]The defendant also points to materials that were discovered after the committee determined that Lipsey was ineligible for benefits and to materials that Tuck may or may not have considered (she could not remember at trial). We do not consider these materials when determining whether the committee's decision was arbitrary and capricious.

district court did not err in determining that Lipsey is not entitled to deferred-vested-pension benefits.  See Sharron v. Amalgamted Ins. Agency Servs., Inc., 704 F.2d 562, 564 (11th Cir. 1983) ("Accordingly, a court should enforce a decision of pension fund trustees even though the court may disagree with it, so long as the decision is not arbitrary or capricious.").[6]

**AFFIRMED.**

---

[6]Lipsey's claim that the district court abused its discretion in denying attorney's fees is without merit.