[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 05-10083
Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 3, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-81066-CV-KLR

ROSEMARY R. RICHARDS,

Plaintiff-Appellant,

versus

HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY,
FIDELITY NATIONAL FINANCIAL, INC.,

Defendants-Appellees.

----------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
----------------------------------------------------------------
(November 3, 2005)

Before EDMONDSON, Chief Judge, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Plaintiff Rosemary Richards appeals the district court's grant of summary judgment against her claim for long term disability benefits brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001. No reversible error has been shown; we affirm.

Plaintiff, who has a long history of intermittent pain, was employed as a Title Examiner by Fidelity National Financial, Inc. ("Fidelity") from April 1999 through October 2002. Fidelity maintained an ERISA welfare benefit plan ("the Policy") administered by Hartford. Plaintiff applied for and was granted short term disability benefits in July 2001. Her application included a 9 August 2002 statement from her primary physician, Dr. Elliot, showing Plaintiff's subjective symptoms as chronic pain, intermittent blurred vision, confusion, and depression. Dr. Elliott made a primary diagnosis of MS and secondary diagnoses of cervical herniated nucleus pulposis, hypertension, and fibromyalgia.

Plaintiff's short term benefits expired on 15 September 2002; on 30 December 2002, Plaintiff applied for long term disability benefits. On 26 February 2003, Hartford determined that Plaintiff was capable of returning to work as a Title Examiner and denied her claim for long term disability benefits. Plaintiff filed an administrative appeal on 2 August 2003. The denial of long term

disability benefits was upheld on 23 October 2003; Plaintiff commenced suit under ERISA. She claimed the denial of benefits was arbitrary and due to be reversed.

The medical evidence in the administrative record is set out in some detail in the district court opinion resolving the parties' cross motions for summary judgment. Richards v. Hartford Life and Accident Ins. Co., 356 F. Supp. 2d 1278 (S.D. Fla. 2004). We reference the district court's chronicling of that evidence, and we note that Plaintiff's complaints included debilitating pain, blurred vision, inability to concentrate and depression. None of the medical evidence in the administrative record documented physical or mental infirmities commensurate with the pain or infirmities recited by Plaintiff.

As the district court observed, when reviewing ERISA plan-benefit denials, courts should first "[a]pply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" ( i.e., the court disagrees with the administrator's decision). If it is not, end the inquiry and affirm the decision." Williams v. BellSouth Telecommunications, Inc., 373 F.3d 1132, 1138 (11th Cir. 2004) (internal citation omitted). If the court concludes that "the administrator's decision is 'de novo wrong,' it should then determine if the administrator "was vested with discretion in reviewing claims." Id. If the administrator was vested

3

with discretion, the court next determines if reasonable grounds support the decision, applying a "deferential arbitrary and capricious standard." Id. Finally, the court must determine if the administrator "operated under a conflict of interest," and if so, "apply heightened arbitrary and capricious review." Id.

In this case, the Policy gave Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms." Because Hartford both funded and administered the Policy, the district court concluded correctly that the heightened arbitrary and capricious standard of review applied if, after de novo review, it was determined that the claim administrator's benefits-denial decision was wrong.

Under ERISA, the plaintiff has the burden of proving her entitlement to contractual benefits. See Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998). To collect under the Policy for the first twenty-four months, Plaintiff must prove that an accidental injury, sickness, or mental illness prevented her "from performing one or more of the Essential Duties of [Her] Occupation." After twenty-four months, benefits are discontinued if Plaintiff can perform the essential duties of any job. The Policy defines "Essential Duty" to mean "a duty that: 1) is substantial, not incidental; 2) is fundamental or inherent to the occupation, and 3) can not be reasonably omitted or changed." The Policy

4

clarifies that "Your Occupation . . . means your occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job you are performing for a specific employer or at a specific location."

Plaintiff contends that her condition prevents her from performing several Essential Duties of the occupation of Title Examiner. Plaintiff specifically claims that she is unable to do these things: 1) perform certain physical aspects of her job, such as heavy lifting and frequent keyboarding; 2) concentrate on details as she proof-reads and reviews titles, customer files, and records, because of pain and the side effects of her pain medication; 3) accurately read small print, because it causes her vision to blur; 4) safely drive twenty-five miles to the courthouse to review public records, because her vision blurs occasionally and the pain caused by sitting for extended periods makes it difficult to concentrate on the road; and 5) work full-time, because her pain increases the longer she works. Based upon our de novo review of the administrative record,[1] it was not wrong for Hartford to

---

[1] In ERISA cases, review is confined to the evidence that was before the administrator when the claim for benefits was denied. Lee v. Blue Cross/Blue Shield of Ala., 10 F.3d 1547, 1550 (11th Cir. 1994). We reject Plaintiff's contention that the district court erred when it refused to consider Plaintiff's award of social security long term benefits some ten months after Hartford's final decision. We also reject Plaintiffs assignment of error to the district court's refusal to consider affidavits of Dr. Elliot and Plaintiff executed more than eleven months after the final administrative decision. Although Plaintiff argues that the affidavits recite information known to Hartford, the affidavits were prepared while Defendants's summary judgment motion was pending and are no part of the administrative record.

conclude that Plaintiff was capable of concentrating and performing the physical aspects of her job based on the opinions of Drs. Mercer and Elliot that Plaintiff could perform sedentary work. The Department of Labor's Dictionary of Occupational Titles defines sedentary work as requiring exertion of "up to 10 pounds of force occasionally . . . and/or a negligible amount of force frequently . . . to lift, carry, push, pull, or otherwise move objects." Lopes v. Metropolitan Life Ins. Co., 332 F.3d 1, 3 n.2 (1st Cir. 2003). This level of physical exertion is consistent with the requirements of a typical Title Examiner position. Dr. Mercer specifically advised Hartford that Plaintiff was not restricted from "frequent keyboarding." And because the ability to concentrate is inherent in most sedentary jobs, it was reasonable for Hartford to assume that the doctors believed Plaintiff's pain and medications would not prevent her from concentrating on work.[2]

It was not wrong for Hartford to conclude that Plaintiff's eyesight did not prevent her from performing the essential functions of her job. Dr. Mercer, an

_____

[2] Contrary to the District Court's suggestion, a doctor's opinion that Plaintiff is capable of performing a sedentary position is not necessarily equivalent to finding that she can perform all the essential duties of a specific sedentary position. Eyesight and hearing requirements vary between positions, but are not addressed by the definition of "sedentary." The cases cited by the district court dealt with policies that disqualified individuals if they could perform any occupation. During the first 24-month period, the Policy in this case required only that Plaintiff show she is unable to perform a single Essential Duty of the position of Title Examiner as it is understood in the general workplace; Plaintiff's ability to perform other sedentary jobs is not dispositive of her claim.

6

independent reviewing physician, advised Hartford that Plaintiff had no "visual limitations at performing fine detail work," and that Plaintiff might suffer brief intervals of blurred vision, but that these periods would be rare. Dr. Kadingo, Plaintiff's treating ophthalmologist, also advised that Plaintiff's eyes were normal and that she had no need for visual restrictions.[3]

Whether Hartford correctly concluded that Plaintiff was capable of working full-time presents a closer question. The Policy states: "To be at work for the number of hours in your regularly scheduled work week is also an Essential Duty." In a letter dated 16 June 2003, Plaintiff's treating physician, Dr. Elliot, explicitly stated that Plaintiff was unable to work in a full-time capacity. But in Dr. Elliot's later October 2003 statement to Dr. Mercer, he indicated that Plaintiff was physically capable of performing a sedentary position; he noted no limitation on hours per week. After reviewing all of Plaintiff's medical records, Dr. Mercer concluded that Plaintiff had been capable of full-time sedentary employment throughout the disability period. In choosing between the conflicting opinions of the treating and reviewing physicians, this Court might have made a different

---

[3]Plaintiff's claim that her blurred vision precluded her from driving twenty-five miles to the courthouse to review title records supports no claim of error. Even assuming arguendo that physically going to courthouses to search and examine title records was an Essential Duty of a Title Examiner, the Policy did not require Hartford to consider that Plaintiff's "specific job" and "specific location" required a twenty-five mile drive.

choice. But even if we were to conclude that the administrator's decision was <u>de novo</u> wrong, we--even under the heightened arbitrary and capricious standard--could not say that the administrator abused his discretion by relying on the independent reviewing physician's opinion that Plaintiff was capable of full-time work during the relevant period.

AFFIRMED.